THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRANDON APELA AFOA,

    Plaintiff,

v.

CHINA AIRLINES LTD, et al.,

    Defendants.

CASE NO. C11-0028-JCC

ORDER ON AIRLINE DEFENDANTS' MOTIONS TO DISMISS

This matter comes before the Court on Defendant Eva Airways' motion to dismiss (Dkt. No. 34), Defendant Hawaiian Airlines' motion to dismiss (Dkt. No. 69), and Defendants China Airlines and British Airways' joint motion to dismiss (Dkt. No. 70). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motions as to Eva Airways and British Airways and GRANTS IN PART and DENIES IN PART the motions as to Hawaiian Airlines and China Airlines for the reasons explained herein.

I.     BACKGROUND

Plaintiff worked for Evergreen Aviation Ground Logistics Enterprises, Inc., ("EAGLE"), a company that provided ground services at Seattle-Tacoma International Airport ("SeaTac") to Defendants China Airlines, Hawaiian Airlines, Eva Airways, and British Airways ("Airline

Defendants"). (Dkt. No. 26 at ¶¶ 2.9–2.10, 3.10, 4.10, 5.40.)[1] Plaintiff alleges that he was severely injured, when the brakes and steering failed on the "pushback" he was driving and it collided with a machine used to load cargo on and off airplanes ("cargo loader"). (Dkt. No. 26 at ¶¶ 8.2, 8.10–8.12.) A "pushback" is a powered industrial vehicle used to move airplanes around the tarmac at large airports. (Dkt. No. 26 at ¶ 6.7.)

Plaintiff alleges that he had been providing pushback services to Hawaiian Airlines at one of the "B" gates when China Airlines directed him to drive the pushback to gate S-15, in order to provide pushback services to a China Airlines flight. (Dkt. No. 26 at ¶ 8.4.) The pushback collided with the cargo loader in the area of the "S" gates at SeaTac. (Dkt. No. 26 at ¶ 8.11.)

Plaintiff alleges that the Airline Defendants exercised pervasive control over the way in which EAGLE employees, including Plaintiff, did their work. His complaint makes the following factual allegations to support that assertion:

(1) "[A]irline personnel will tell EAGLE's pushback operators exactly where to go, when to start, when to stop, what speed to operate at, what tow-bar or other equipment to use when working with a particular airplane, and so forth." (Dkt. No. 26 at ¶ 9.8.)

(2) Airline employees told EAGLE employees "exactly where to go, what to do, and when to do it." (Dkt. No. 26 at ¶ 9.18.) As airplanes arrived, employees or agents of Defendant Airlines told EAGLE employees "where and when to tow and gate their airplanes." (Dkt. No. 26 at ¶ 9.12.)

(3) Personnel of the Defendant Airlines would "oversee the loading and unloading of luggage and cargo" by EAGLE employees. (Dkt. No. 26 at ¶ 9.8.) Hawaiian Airlines personnel would "often interfere with the order in which baggage and cargo were offloaded by EAGLE." (Dkt. No. 26 at ¶ 9.20.)

(4) When EAGLE was tasked with moving planes that were powered down and empty of

---

[1] All facts are taken from Plaintiff's Second Amended Complaint (Dkt. No. 26), which is the operative complaint in this matter (*see* Dkt. No. 62).

ORDER ON AIRLINE DEFENDANTS' MOTIONS
TO DISMISS
PAGE - 2

| | |
|---|---|
| 1 | passengers using a pushback—a practice known as "brake riding"—employees of |
| 2 | each Airline Defendant would frequently tell EAGLE "exactly who they wanted to |
| 3 | brake ride" from the cockpit. (Dkt. No. 26 at ¶ 9.22.) |
| 4 | (5) The Airline Defendants had "the right to hire and fire" their ground service |
| 5 | contractor's employees or otherwise determine who [was] authorized to work on |
| 6 | [their] contract[s]." (Dkt. No. 26 at ¶ 9.26.) |

Plaintiff also includes allegations that Hawaiian Airlines personnel would micromanage all aspects of the EAGLE employees' work related to loading cargo on a regularly chartered Hawaiian flight that served the Seattle Seahawks football team. (Dkt. No. 26 at ¶ 9.21.)

In addition, Plaintiff alleges that the Airline Defendants were aware of the pushback's mechanical problems before his accident. He alleges that personnel for the Airline Defendants had "operated the pushback [involved in Plaintiff's accident] themselves." (Dkt. No. 26 at ¶ 8.18.) He also alleges that they had "observed wheel chocks being used to stop the pushback and often assisted in stopping the pushback by placing the wheel chocks themselves." (*Id.*) Finally, Plaintiff alleges that the pushback involved in his accident was the only one EAGLE had to provide services to the Airline Defendants. (Dkt. No. 26 at ¶ 8.16.)

Plaintiff filed this action in King County Superior Court. He amended his complaint once in the state court before Defendants timely removed the action on the basis of diversity jurisdiction. (Dkt. No. 1, 2-2 at 13.) After Hawaiian Airlines filed a motion to dismiss, Plaintiff filed a second amended complaint (Dkt. No. 26). The Court denied Defendants' motion to strike the second amended complaint (Dkt. No. 62). The Court later stayed proceedings in this matter pending the Washington State Supreme Court's review of a trial court decision granting the defendant's motion for summary judgment in Plaintiff's parallel suit against the Port of Seattle, which owns and operates SeaTac. (Dkt. No. 77.)

## II. DISCUSSION

### A. Pleading Standard and Leave to Amend

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The court does not accept legal conclusions as true, so "[t]hreadbare recitals of the elements of a cause of action" are not sufficient to survive a motion to dismiss. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. A claim that fails to present a "cognizable legal theory" or sufficient facts to support a cognizable claim will be dismissed under Rule 12(b)(6). *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).

The court should "freely give" leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The court weighs five factors in deciding whether to grant leave to amend—"bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). "Dismissal without leave to amend" on the basis of futility "is appropriate only when the Court is satisfied that an amendment could not cure the deficiency." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012).

### B. Liability for Injury Suffered by Employees of an Independent Contractor

Plaintiff claims that the Airline Defendants breached common law duties to ensure a safe workplace and failed to comply with the federal Occupational Safety and Health Act ("OSHA") and the Washington Industrial Safety and Health Act of 1973 ("WISHA"). The Airline Defendants have all brought motions to dismiss Plaintiff's complaint, arguing that they owed no

duty to Plaintiff, the employee of an independent contractor, and that Plaintiff has not pled sufficient facts to support his "retained control" theory of liability.

   1. **Common Law Claim**

In Washington, the general common law rule is that one who hires an independent contractor "is not liable for injuries to employees of the independent contractor resulting from their work." *Kelley v. Howard S. Wright Constr. Co.*, 582 P.2d 500, 505 (Wash. 1978). There is an exception to this rule where "the employer of the independent contractor . . . retains control over some part of the work." *Id.* The employer of the independent contractor "then has a duty, within the scope of that control, to provide a safe place to work." *Id.* "The test of control is not the actual interference with the work of the [contractor], but the right to exercise such control." *Id.*; *see also Kamla v. Space Needle Corp.*, 52 P.3d 472, 476 (Wash. 2002) (rejecting the argument that Washington law required actual control as opposed to "retention of the right to direct the manner in which the work is performed").

The Washington Supreme Court has explained that the "difference between an independent contractor and an employee is whether the employer can tell the worker how to do his or her job." *Kamla*, 52 P.3d at 474. Indeed, the reason employers are not liable for injuries to independent contractors is that the employer "cannot control the manner in which the independent contractor works." *Id.* In Plaintiff's parallel suit against the Port of Seattle, the Washington Supreme Court reaffirmed these principles and explained that "the existence of a safe workplace duty depends on retained control over work, not on labels or contractual designations such as 'independent contractor' or 'general contractor.'" *Afoa v. Port of Seattle*, 296 P.3d 800, 810 (Wash. 2013). The court further explained that the purpose of the retained control doctrine is "to place the safety burden on the entity in the best position to ensure a safe working environment." *Id.*

The state high court applied these principles in *Kelley*, and concluded that a general contractor on a construction site could be liable for injuries to the employee of an independent

contractor who fell from a multistory building project that had no safety lines or nets to protect workers. 582 P.2d at 503–504. The court explained that the general contractor "had general supervisory and coordinating authority under its contract with the owner, not only for the work itself, but also for compliance with safety standards." *Id.* at 505. The general contractor "had the right to require use of safety precautions such as lines or nets, or to halt dangerous work in adverse weather conditions." *Id.*

Applying the same principles in *Kamla*, the court concluded that the Space Needle Corporation was not liable for injuries to the employee of an independent contractor hired to install a New Year's Eve fireworks display on the Space Needle. 52 P.3d at 474. Kamla was dragged into the Space Needle's elevator shaft after his safety line became entangled with a passing elevator. *Id.* The court concluded that the Space Needle Corporation was not liable because its agreement with the independent contractor was limited to providing "a suitable display site and fallout zone, access to the display site to set up the display, adequate crowd control, firefighters, and permit fees." *Id.* at 476. The court explained that Space Needle Corporation did not "retain control over the manner in which [the independent contractor] did its work" and the contractor was "free to do the work in its own way." *Id.*

In contrast, the state court of appeals found that the Space Needle Corporation was liable for injuries to an employee of the same independent contractor who fell while installing fireworks on the antenna level of the building. *Kinney v. Space Needle Corp.*, 85 P.3d 918, 919 (Wash. App. 2004). The court explained that the Space Needle Corporation provided the safety equipment for the job and instructed employees of the independent contractor on required safety procedures. *Id.* In *Afoa*, the Washington State Supreme Court noted that *Kinney* correctly applied of the rule set forth in *Kamla*. 296 P.3d at 810 n.2.

The question raised by the Airline Defendants' motions to dismiss is whether Plaintiff has alleged sufficient factual matter, accepted as true, to make a plausible claim that Defendants retained control over EAGLE employees' work under *Kelley* and its progeny.

### i. Hawaiian Airlines and China Airlines

Plaintiff alleges that he was driving the pushback from a Hawaiian Airlines gate to a China Airlines gate when his was injured. He also alleges that all Defendant Airlines exercised pervasive control over the manner in which EAGLE employees performed their work. Plaintiff states that personnel from the Airline Defendants would direct EAGLE employees as to exactly how, when, and where to do their work. Airline personnel would sometimes specify which EAGLE employee they wanted doing which jobs, the order in which EAGLE employees loaded cargo, and even the speed at which the pushback should be operated.

Taken in the light most favorable to Plaintiff, these factual allegations are sufficient to conclude that Hawaiian Airlines and China Airlines retained control over his work and are potentially liable for his injuries because he was working for them when he was injured. Under *Kelley*, *Kamla*, and *Kinney*, the level of control described by Plaintiff over the manner in which EAGLE employees did their work is sufficient to conclude that all the Airline Defendants owed Plaintiff a duty to provide a safe workplace when he was working for them.

Moreover, Plaintiff provides factual allegations to support his argument that Hawaiian and China breached that duty because they knew that the pushback was experiencing mechanical problems, including brake problems, prior to the accident. He supports this claim with the factual allegations that employees of the Airline Defendants saw EAGLE employees using wheel chocks to stop the pushback, had helped to place wheel chocks, and at times operated the pushback themselves.

The Court concludes that Plaintiff's factual allegations are sufficient to support his common law negligence claims against Hawaiian Airlines and China Airlines.

### ii. Eva Airways and British Airways

As Eva Airways and British Airways point out, Plaintiff alleges that at the time he was injured he was doing work for Hawaiian Airlines and China Airlines, not for Eva Airways or British Airways. Accordingly, it would be illogical to conclude that either Eva or British owed

Plaintiff any duty to provide him with a safe workplace at the time he was injured. Although an employer can be liable for injuries to an independent contractor's employee, the employer is not liable when the injured employee is performing work on another contract.

Plaintiff argues that all four Airline Defendants were "acting in concert" with respect to EAGLE employees and are jointly liable for Plaintiff's injuries under Revised Code of Washington section 4.22.070. This argument is unavailing. The general rule in Washington is that liability is allocated proportionately among joint tortfeasors. Section 4.22.070(1)(a) provides a narrow exception to this rule when parties "consciously act together in an unlawful manner." *Kottler v. State*, 963 P.2d 834, 841 (Wash. 1998) (quoting and adopting *Gilbert H. Moen Co. v. Island Steel Erectors, Inc.*, 878 P.2d 1246, 1249 (Wash. App. 1994)). The state court of appeals decision in *Moen* explained that "joint participation in a legitimate commercial relationship does not constitute acting in concert." 878 P.2d at 1249 (quoting Gregory C. Sisk, *Interpretation of the Statutory Modification of Joint and Several Liability: Resisting the Deconstruction of Tort Reform*, 16 U. Puget Sound L. Rev. 1, 107 (1992)).

Even if the Defendant Airlines did actively coordinate to share the available EAGLE resources as Plaintiff alleges, they were engaged in a legitimate commercial relationship and were not "acting consciously together in an unlawful manner" as required by the statute. *Yong Tao v. Heng Bin Li*, 166 P.3d 1263 (Wash. App. 2007), on which Plaintiff relies, does not change this conclusion. In *Yong Tao*, the state court of appeals applied the principles set forth in *Moen* to a case where two van drivers agreed to follow a lead driver and drove at high speeds that were unsafe for the wintry road conditions. 166 P.3d at 1267. In finding that the lead driver could be held liable for injuries sustained by a passenger in the second driver's van, the court explained that the drivers agreed to follow each other and that all drivers "acted illegally" pursuant to that plan. *Id.* As noted, Plaintiff makes no allegation that Airline Defendants were acting illegally.

Plaintiff has not alleged facts sufficient to support a cognizable theory of liability against Eva Airways or British Airways. The Court dismisses with prejudice Plaintiff's negligence

claims against Eva and British. Plaintiff alleges that he was performing work for Hawaiian Airlines and China Airlines when he was injured. In light of the allegations Plaintiff has already made, there are no facts he could allege that would suggest Eva or British are liable so amendment would be futile. *See Harris*, 682 F.3d at 1135.

### 2. Statutory Claim

The Washington Industrial Safety and Health Act of 1973 ("WISHA") requires employers to comply with the rules, regulations, and orders promulgated there under. Wash. Rev. Code § 49.17.060(2). The Washington State Supreme Court held in *Stute v. P.B.M.C., Inc.*, 788 P.2d 545, 547 (1990), that under section 49.17.060(2), an employer may be liable to the employees of an independent contractor based on failure to comply with specific WISHA regulations. A general contractor on a jobsite has a non-delegable duty to all employees on the jobsite to ensure compliance with WISHA regulations. *Afoa*, 296 P.3d at 807. In contrast, jobsite owners "have a duty to comply with WISHA only if they retain control over the manner in which contractors complete their work." *Id.*

Hawaiian Airlines argues that it is not liable for any alleged WISHA violations because it is not analogous to a general contractor on a construction site and jobsite owners are not necessarily liable for WISHA violations. (Dkt. No. 69 at 16–17.) Hawaiian does not appear to argue that it is not either a jobsite owner or analogous to a jobsite owner. Plaintiff alleges that the Airline Defendants "controlled and managed" the tarmac area where Plaintiff worked. The Court concludes that Plaintiff has set forth sufficient facts to make a plausible claim that the Airline Defendants are analogous to jobsite owners for purposes of Plaintiff's WISHA claims.

Under *Kamla*, whether a jobsite owner has a duty to comply with WISHA regulations turns on whether they retained control over the manner in which contractors complete their work. 52 P.3d at 477. As the Court explained in the prior discussion section, Plaintiff has alleged sufficient facts to support his claim that Hawaiian Airlines and China Airlines retained such control over Plaintiff's work when he was injured. His allegations contradict any claim that Eva

Airways or British Airways retained such control at the time of the accident. Accordingly, Plaintiff's WISHA claims against Eva Airways and British Airways are dismissed with prejudice.

### C. Premises Liability Claim

Plaintiff alleges that the Airline Defendants breached duties that they owed to Plaintiff based on their possession of the land on which Plaintiff was injured. Plaintiff alleges that the Port of Seattle, not the Airline Defendants, owns SeaTac. (Dkt. No. 26 at ¶ 1.11.) Plaintiff's complaint refers to contractual agreements between the Port of Seattle and the Airline Defendants, including a "Signatory Lease and Operating Agreement 2006–2012" (*see, e.g.*, Dkt. No. 26 at ¶ 2.3–2.4.), but includes no specific allegation that the Airline Defendants leased portions of SeaTac from the Port. In short, the complaint fails to provide any factual allegation sufficient to support Plaintiff's claim that any of the Airline Defendants possessed the premises on which he was injured.

Plaintiff's premises liability claims against the Airline Defendants are dismissed without prejudice. If Plaintiff can allege facts sufficient to support his assertion that one or more of the Airline Defendants possessed the land on which he was injured then he may amend his complaint to add those factual allegations.

The Court does not accept the Airline Defendants' argument that Plaintiff should not be permitted to further amend his complaint because he has already done so once in state court and once in federal court. Although the number of times a plaintiff has previously amended his complaint is one factor the court considers in determining whether to permit additional amendment, the most important factor is prejudice to the defendant. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) (district court erred in denying leave to amend where only reason given was that plaintiff had previously amended complaint three times). The Airline Defendants have not articulated any prejudice they will suffer from Plaintiff's further amendment of his

complaint.

## III. CONCLUSION

For the foregoing reasons, Eva Airways' motion to dismiss (Dkt. No. 34) is GRANTED, Hawaiian Airlines' motion to dismiss (Dkt. No. 69) is GRANTED IN PART and DENIED IN PART, and China Airlines and British Airways' joint motion to dismiss (Dkt. No. 70) is GRANTED IN PART and DENIED IN PART. Plaintiff's negligence and WISHA claims against Eva Airways and British Airways are dismissed with prejudice. Plaintiff's negligence and WISHA claims against Hawaiian Airlines and China Airlines remain. Plaintiff's premises liability claims against all the Airline Defendants are dismissed without prejudice. Plaintiff's amended complaint, if any, shall be filed within twenty (20) days of the date of this order.

DATED this 12th day of April 2013.

John C. Coughenour
UNITED STATES DISTRICT JUDGE