THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRANDON APELA AFOA,<br><br>Plaintiff,<br><br>v.<br><br>CHINA AIRLINES LTD, *et al.*,<br><br>Defendants. | CASE NO. C11-0028-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff's motion to vacate judgment and reopen case (Dkt. No. 190). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons stated herein.

## I. BACKGROUND

Plaintiff was paralyzed while working for Evergreen Aviation Ground Logistics Enterprises, Inc., ("EAGLE"), a company that provided ground services at Seattle-Tacoma International Airport ("SeaTac Airport") to Defendants China Airlines ("China"), Hawaiian Airlines ("Hawaiian"), Eva Airways ("Eva"), and British Airways ("British") (collectively the "Airline Defendants"). (Dkt. No. 26 at 2–5.) On December 26, 2007, Plaintiff was driving a "pushback" at SeaTac Airport when the vehicle's brakes and steering failed causing Plaintiff to collide with a cargo loading machine, which collapsed on him. (*Id*. at 8.)

Plaintiff initially filed a lawsuit in King County Superior Court against the Port of Seattle (the "Port"), which owns SeaTac Airport. (Dkt. No. 105 at 2.) The superior court dismissed Plaintiff's claims against the Port on summary judgment. Plaintiff appealed, and the Washington State Supreme Court ultimately held that the trial court's grant of summary judgment was erroneous and remanded the case for further proceedings. *See Afoa v. Port of Seattle*, 296 P.3d 800 (Wash. 2013) (*Afoa I*).

After the superior court dismissed Plaintiff's claims against the Port, and shortly before the three-year statute of limitations for tort actions ran, Plaintiff filed this lawsuit in King County Superior Court against the Airline Defendants and the manufacturers of the pushback and the cargo loader involved in his accident. (Dkt. No. 105 at 2–3.)[1] Plaintiff alleged three theories of negligence against the Airline Defendants: (1) breach of duties under the Washington Industrial Safety and Health Act of 1973 ("WISHA claim"); (2) breach of duties under the common law retained-control doctrine ("retained control claim"); and (3) breach of duties owed to an invitee on premises by a possessor of land ("premises liability claim"). (Dkt. No. 117 at 7–10.)[2]

Defendants timely removed the case to this Court, and the Court stayed all proceedings pending the Washington State Supreme Court's resolution of Plaintiff's appeal in *Afoa I*. (Dkt. No. 77.) After the Washington State Supreme Court issued its opinion in *Afoa I*, this Court lifted its stay, and the Airline Defendants each moved to dismiss Plaintiff's second amended complaint on the pleadings. (Dkt. Nos. 24, 34, 74.) The Court granted the Airline Defendants' motions to dismiss Plaintiff's premises liability claim, but gave Plaintiff leave to amend. (Dkt. No. 117 at 10) ("[T]he complaint fails to provide any factual allegation sufficient to support Plaintiff's claim that any of the Airline Defendants possessed the premises on which he was injured.") The

---

[1] Plaintiff's motion does not implicate the manufacturer defendants, and the Court does not discuss them any further.

[2] Plaintiff asserted identical negligence claims against the Port in the state court action. (*See* Dkt. No. 198 at 14.)

Court denied Hawaiian and China's motions to dismiss Plaintiff's retained control claim and WISHA claim, ruling that Plaintiff alleged facts demonstrating that "Hawaiian Airlines and China Airlines retained control over his work and [were] potentially liable for his injuries because he was working for them when he was injured." (*Id*. at 7, 9.)

Conversely, the Court granted Eva and British's motion to dismiss Plaintiff's retained control claim and WISHA claim ruling that "at the time [Plaintiff] was injured he was doing work for Hawaiian Airlines and China Airlines, not for Eva Airways or British Airways." (*Id*. at 7–8.) The Court reasoned that:

> [I]t would be illogical to conclude that either Eva or British owed Plaintiff any duty to provide him with a safe workplace at the time he was injured. Although an employer can be liable for injuries to an independent contractor's employee, the employer is not liable when the injured employee is performing work on another contract.

(*Id*. at 8.) In making its ruling, the Court cited to the same legal authority that the Washington State Supreme Court applied in *Afoa I* when assessing the Port's liability under a retained-control theory of negligence. (*Id*.) (citing *Kamla v. Space Needle Corp.*, 52 P.3d 472, 476 (Wash. 2002)) (rejecting defendant's argument that Washington law required actual control as opposed to "retention of the right to direct the manner in which the work is performed"); *see Afoa I*, 296 P.3d at 810 (noting that *Kamla* established that "if a jobsite owner . . . retained the right to control work, it could be liable under a common law safe workplace theory.").

After Plaintiff amended his complaint, the Airline Defendants filed motions for summary judgment on Plaintiff's remaining claims. (Dkt. Nos. 150, 153, 154, 158.) The Court granted summary judgment on Plaintiff's premises liability claim as to all Defendants, ruling that the evidence demonstrated that "no defendant had ownership or control over the area" where "the accident occurred." (Dkt. No. 173 at 5–6.) The Court granted summary judgment on Plaintiff's WISHA claim as to Hawaiian and China because Plaintiff had "not even identified what regulations were violated, much less identified relevant actions on the part of Defendants or suggested what facts could be uncovered that would further the unidentified claims." (*Id*. at 7.)

The Court also granted summary judgment to China on Plaintiff's retained control claim because China presented testimony that it "had no authority over or involvement with Plaintiff driving the tug/pushback," and Plaintiff did not produce any contradictory evidence. (*Id*. at 8.) Conversely, the Court initially denied Hawaiian's motion for summary judgment because the motion relied on a declaration from a witness that had not been identified in Hawaiian's initial disclosures. (*Id.*) Hawaiian subsequently filed a second motion for summary judgment, asserting that Plaintiff "was not working for Hawaiian at the time of his accident," and that Hawaiian "in no way had authority over or supervised the plaintiff in any way with respect to him driving the tug/pushback." (Dkt. No. 174 at 10, 13.) In response to Hawaiian's second motion for summary judgment, Plaintiff stated that he was "now certain that Hawaiian Airlines, China Air, Eva Air, and British Air are not responsible for the loss, that the Port of Seattle is and always has been responsible for the loss, and [he] therefore does not oppose the dismissal of claims against Hawaiian Airlines." (Dkt. No. 176 at 6–7.)

Based on the evidence presented by Hawaiian, and Plaintiff's concession, the Court dismissed Plaintiff's remaining retained control claim against Hawaiian. (Dkt. No. 177 at 1) ("Having conducted further discovery, Plaintiff now confirms that Defendant Hawaiian Airlines was not responsible for his loss, and he does not oppose the dismissal of claims against it."). Plaintiff neither moved for reconsideration of nor appealed any of the Court's orders dismissing his claims against the Airline Defendants.

Following the Court's entry of final judgment, the Port amended its complaint in the state court action to allege that the Airline Defendants were at fault for Plaintiff's injuries. (Dkt. No. 198 at 9–10.) Plaintiff moved for summary judgment on the Port's proposed "empty chair" defenses, arguing that this Court's dismissal of Plaintiff's claims against the Airline Defendants precluded the Port from seeking to hold them liable. (*Id*. at 13–36.) The superior court denied Plaintiff's motion, and allowed the Port to present empty chair defenses against the Airline Defendants at trial. (*Id*. at 38–40.) Following a five-week trial, a jury found damages for Plaintiff

in the amount of $40 million, concluding that the Port was 25% liable, each Airline Defendant was 18.7% liable, and Plaintiff was 0.02% liable. (*Id*. at 44–45.)

Plaintiff made a post-trial motion seeking, among other things, to hold the Port vicariously liable for the Airline Defendants' negligence arguing that the Port had a nondelegable duty to provide Plaintiff with a safe workplace. (*Id*. at 52–54.) The superior court denied Plaintiff's motion. On appeal, the Washington State Court of Appeals reversed the trial court, holding that "the Port had a nondelegable duty to ensure a safe workplace and safe equipment and is vicariously liable for breach of that duty." *Afoa v. Port of Seattle*, 393 P.3d 802, 817 (Wash. Ct. App. 2017).[3] The court of appeals further held that the Port was "not entitled to proportionately reduce its liability based upon an allocation of fault to the four nonparty airlines." *Id*. As a result, the court of appeals ordered the case remanded to the superior court for entry of an amended judgment making the Port liable for the 74.8% of fault that was allocated to the Airline Defendants at trial. *Id*.

After the Port sought discretionary review, the Washington State Supreme Court reversed the court of appeals with regard to the Port's vicariously liability. *Afoa v. Port of Seattle*, 421 P.3d 903, 909 (Wash. 2018) ("*Afoa II*"). The Supreme Court held that the Port was not vicariously liable for the Airline Defendant's concurrent negligence because breaches of the non-delegable duties at issue were still subject to apportionmate under Revised Code of Washington § 4.22.070. *Id*. The Supreme Court further held that although the Port could have been vicariously liable for the Airline Defendants' negligence "the jury was not asked to find if the Port retained control of the airlines," such that the Port could be held jointly and severally liable. *Id*. at 915. As a result, the Supreme Court reinstated the superior court's judgment, which awarded Plaintiff approximately $10 million in damages against the Port. *Id*.

After the entry of a satisfaction of judgment, Plaintiff filed this motion to vacate the

---

[3] The court of appeals affirmed the jury's verdict regarding the Port's liability. *Afoa II*, 393 P.3d at 813.

Court's prior judgment and reopen this case. (Dkt. No. 190.) Pursuant to Federal Rule of Civil Procedure 60(b)(6), Plaintiff asks the Court to vacate its prior judgment dismissing all claims against the Airline Defendants and allow these claims to proceed to trial. (*Id*. at 4.)[4] The Airline Defendants object to Plaintiff's motion. (Dkt. Nos. 197, 200, 201.)

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 60(b) allows a district court to "relieve a party or its legal representative from a final judgment, order, or proceeding," under any of six circumstances. Fed. R. Civ. P. 60(b). Under the "catch-all provision," a district court can vacate a judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6); *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008). A party moving for relief under Rule 60(b)(6) "must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the action in a proper fashion." *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006) (internal quotation marks and alteration omitted). The Ninth Circuit has repeatedly cautioned that the Rule 60(b) catch-all provision should be "used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *Id*. (quoting *United States v. Washington*, 394 F.3d 1152, 1157 (9th Cir. 2005)); *see also United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993).

### B. Plaintiff's Motion to Vacate

Plaintiff asks the Court to vacate its prior judgment against the Airline Defendants because "he received substantially different treatment in federal and state courts." (Dkt. No. 190

---

[4] Plaintiff specifically asks the Court to: (1) vacate its order dismissing Plaintiff's claims against Eva and British (Dkt. No. 117); (2) vacate its orders dismissing Plaintiff's claims against Hawaiian and China (Dkt. No. 173, 178); and (3) vacate its final judgment (Dkt. No. 189) with regard to the dismissal of all claims against the Airline Defendants. (Dkt. No. 190 at 4.)

at 17.) Plaintiff asserts that the Court "dismissed his claims against the airlines on the basis that the airlines did not owe him duties under WISHA and the retained control doctrine. Yet the state courts found the airlines did owe these duties concurrently with that of the Port." (*Id*.) As a result, Plaintiff asserts that he is precluded from collecting a judgment against the Airline Defendants, despite a state court jury finding each of them partially at fault for is injuries. (*Id*. at 17.) Plaintiff cites to several cases where courts have granted relief from a judgment "to rectify disparate results in litigation arising from the same transaction or occurrence." (*Id*. at 14) (citing *Gondeck v. Pan Am. World Airways, Inc.*, 382 U.S. 25, 31 (1965); *In re Terrorist Attacks on Sept. 11*, 2001, 741 F.3d 353, 355 (2d Cir. 2013); *Pierce v. Cook & Co.*, 518 F.2d 720, 721 (10th Cir. 1975)).

Plaintiff has not demonstrated that "extraordinary circumstances" prevented him from challenging this Court's judgment dismissing his claims against the Airline Defendants, which he now argues was erroneous. *See Alpine Land & Reservoir Co.*, 984 F.2d at 1049. Instead, the outcome in this case is a result of Plaintiff's own litigation choices and rulings by the Washington courts that are only tangentially related to this Court's dismissal of Plaintiff's claims. This combination of circumstances, though preventing Plaintiff from collecting a judgment against the Airline Defendants, does not warrant relief under Rule 60(b)(6).

Plaintiff suggests that the Court's legal rulings were "rejected" by both the court of appeals and Washington State Supreme Court in *Afoa II*. (Dkt. No. 190 at 10, 12.) Plaintiff characterizes the appellate courts' decisions in *Afoa II* as creating "changes in controlling substantive law in Washington," that warrant vacating the Court's judgment. (*Id*. at 3.) The Court disagrees.

As an initial matter, the Washington appellate courts were not reviewing this Court's orders dismissing the Airline Defendants, nor were their rulings made on the same evidentiary record or procedural posture. Neither the court of appeals nor the Supreme Court's opinions in *Afoa II* address some of the reasons that this Court gave for dismissing Plaintiff's claims against

the Airline Defendants—for example, that Plaintiff failed to provide evidence in support of his premise liability claims or that Plaintiff failed to specify what WISHA regulations the Airline Defendants had violated. (*See* Dkt. No. 176 at 5–7.) The Court perceives nothing in the *Afoa II* decisions that would cure these previously identified deficiencies or warrant vacating its dismissal of these claims.

Contrary to Plaintiff's contention, *Afoa II* did not bring about a change in decisional law regarding the Court's dismissal of Plaintiff's WISHA claim and retained control claim against the Airline Defendants. (Dkt. No. 190 at 10.) To the extent the court of appeals discussed Plaintiff's retained control claim and WISHA claim, it did so with regard to the Port's liability, not the Airline Defendants' liability. *Afoa II*, 393 P.3d at 813. The court of appeals affirmed that there was "substantial evidence to support the jury's finding that the Port retained a right to control the manner of EAGLE's work, including how EAGLE maintained its equipment." *Id*. Not only was the court of appeals' decision made on a different evidentiary record than this Court's orders dismissing Plaintiff's claims, but the court of appeals also grounded its decision in the same precedent that this Court relied on to dismiss Plaintiff's claims against the Airline Defendants. (*See* Dkt. Nos. 117 at 7–9, 173 at 7–8.); *Afoa II*, 393 P.3d at 808–09.

The Washington State Supreme Court discussed the Airline Defendants' liability only as it related to Plaintiff's assertion that the Port was vicariously liable for his injuries. *Afoa II*, 421 P.3d at 909–10. Like it did in *Afoa I*, the Supreme Court reiterated the same legal principles that this Court applied in dismissing Plaintiff's claims against the Airline Defendants. *Id*. (citing *Kamla* for the proposition that under WISHA and the common law the standard for control exists "where there is a retention of the right to direct the manner in which the work is performed.")

What Plaintiff is really arguing, is that the opinions in *Afoa II* demonstrate that the Court misapplied the controlling legal standard in dismissing his claims against the Airline Defendants. But if the Court misapplied Washington law, its ruling would have been erroneous prior to any of the state court decisions in *Afoa II*, which reiterated, but did not change, the controlling legal

principles that this Court applied.

In other words, Plaintiff should have either moved for reconsideration or appealed the dismissal of the Airline Defendants once the Court entered final judgment. Plaintiff did neither, and even conceded that "Hawaiian Airlines, China Air, Eva Air, and British Air are not responsible for [his] loss." (Dkt. No. 176 at 6.) It appears from the record that Plaintiff made this concession—and decided to forego an appeal—because he assumed the Port would be held fully liable for his injuries in the state court lawsuit. (*See id.* at 6–7.) ("[Plaintiff] is now certain that . . . the Port of Seattle is and always has been responsible for the loss."). However, relief under Rule 60(b)(6) is not warranted where a party makes a strategic decision not to appeal a judgment that it later argues was erroneous. *See Ackermann v. United States,* 340 U.S. 193, 198 (1950) (affirming district court's denial of a Rule 60(b)(6) motion where petitioner made a "calculated and deliberate" choice not to appeal the district court's allegedly erroneous judgment); *see also Title v. United States*, 263 F.2d 28, 31 (9th Cir. 1959) ("Rule 60(b) was not intended to provide relief for error on the part of the court or to afford a substitute for appeal.").

The only change in decisional law that Plaintiff can conceivably point to as a basis for vacating the Court' judgment is the Washington State Supreme Court's conclusion that the Port was not vicariously liable for the Airline Defendant's concurrent negligence as determined by the state court jury, and that it was proper to apportion fault to the Airline Defendants notwithstanding the Port's nondelegable duty. *Afoa II*, 421 P.3d at 909–10. But this Court never addressed the issues of the Port's vicarious liability or the apportionment of fault under Revised Code of Washington § 4.22.070, and neither issue played any part in the Court's dismissal of Plaintiff's claims against the Airline Defendants. The Court struggles to see how a change in the law that was not pertinent to its judgment can represent "extraordinary circumstances that prevented [Plaintiff] from taking timely action to prevent or correct" what he now argues was an erroneous judgment. *See Latshaw*, 452 F.3d at 1103. Moreover, the Washington State Supreme Court explicitly noted that Plaintiff's inability to recover from the Airline Defendants was a

result of his own litigation decisions: his failure to initially sue the Port and the Airline Defendants in a single action; his failure to argue at trial that the Airline Defendants were the Port's agents for purposes of establishing vicarious liability; and his failure to prove his claims against the Airline Defendants in this lawsuit. *See generally Afoa II*, 421 P.3d 903.

Each of the cases Plaintiff cites in support of his motion are distinguishable from the facts of this case. In *Gondeck*, two plaintiffs brought claims under the Longshoremen's and Harbor Worker's Compensation Act arising from the same car accident. 382 U.S. at 25. In one of the cases, the Fifth Circuit ultimately affirmed the district court's decision to set aside the plaintiff's award from the Department of Labor. *Id*. Following that decision, the Fourth Circuit affirmed an award for the other plaintiff, relying on the same United States Supreme Court precedent that the Fifth Circuit had applied in denying an award. The Supreme Court subsequently reversed the Fifth Circuit's judgment because it had "misinterpreted the [controlling] standard," which resulted in the plaintiff not receiving compensation while the other did. *Id*. at 27.

In contrast to *Gondeck*, this case does not involve two similarly situated plaintiffs who received disparate outcomes based on contrary interpretations of the same controlling legal standard. This case involves one plaintiff litigating two lawsuits and receiving disparate results based largely on his own litigation decisions. *See also In re Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353. The case that Plaintiff argues most justifies his motion actually illustrates why Rule 60(b)(6) relief is not warranted. *See Pierce*, 518 F.2d 720. In *Pierce*, separate plaintiffs filed lawsuits in Oklahoma state court arising from the same car accident. *Id*. at 721. One of the lawsuits was ultimately removed to and litigated in federal court, while the other remained in state court. *Id*. The federal court dismissed the plaintiffs' lawsuit based on a controlling decision from the Oklahoma Supreme Court, *Marion Machine, Foundry & Supply Co. v. Duncan*, 187 Okl. 160, 101 P.2d 813 ("*Marion Machine*"). *Id*. On appeal, the Tenth Circuit affirmed the district court's dismissal based on the rule established in *Marion Machine*. *Id*. at 722.

The state court action was also subsequently dismissed based on *Marion Machine*. *Id*.

The plaintiff appealed to the Oklahoma State Supreme Court, which overruled its prior holding in *Marion Machine,* and remanded the case to the trial court for further proceedings. *Id*. The plaintiff eventually settled his lawsuit. *Id*. In light of this result, the plaintiffs in the federal action sought to vacate the dismissal of their claims pursuant to Federal Rule of Civil Procedure 60(b)(6). *Id*. The Tenth Circuit granted the motion, noting that the plaintiffs had received "substantially different treatment than that received in state court by another injured in the same accident." *Id*. at 723. In finding that extraordinary circumstances existed under Rule 60(b)(6), the Tenth Circuit emphasized that the plaintiffs "lost because state law control[ed] and the *Marion Machine* decision defeated their claims as a matter of law . . . [while] [a]nother party, exercising a stratagem not shown to be available to these plaintiffs, obtained the reversal of the *Marion Machine* decision and a settlement thereafter." *Id*. at 722 (emphasis added).

This case differs from *Pierce* in two important ways. First, there was no change in Washington law following the Court's dismissal of the Airline Defendants that would have altered the Court's judgment, like there was in *Pierce* when the Oklahoma Supreme Court overruled the controlling decision in *Marion Machine*. Second, the federal Plaintiffs in *Pierce* were unable to appeal their case to the Oklahoma Supreme Court, and therefore were unable to obtain the relief that the state plaintiffs did. *Id*. at 721–22. By contrast, Plaintiff could have appealed this Court's judgment, but chose not to. That Plaintiff pursued a different strategy, and ultimately obtained a less than optimal outcome in the state court action, does not mean he should get a second bite at the apple in this case. Ultimately, Plaintiff has not demonstrated extraordinary circumstances warranting relief under Rule 60(b)(6).

## III. CONCLUSION

Plaintiff's motion to vacate judgment (Dkt. No. 190) is DENIED.

//

//

//

DATED this 11th day of July 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE